# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued September 14, 2009　　　Decided November 13, 2009

No. 08-5221

CRAIG ALLAN WILLIAMS,
APPELLANT

v.

R. MARTINEZ, WARDEN AND KENNETH L. WAINSTEIN, UNITED
STATES ATTORNEY FOR THE DISTRICT OF COLUMBIA,
APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 1:08-cv-00971-ESH)

*William Hoffman*, appointed by the court, argued the cause
as *amicus curiae* in support of appellant. With him on the briefs
was *David L. Cousineau*.

*Craig A. Williams*, pro se, filed briefs for appellant.

*Michael T. Ambrosino*, Assistant U.S. Attorney, argued the
cause for appellees. With him on the brief was *Roy W. McLeese
III*, Assistant U.S. Attorney. *R. Craig Lawrence*, Assistant U.S.
Attorney, entered an appearance.

Before: ROGERS, TATEL and BROWN, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* TATEL.

Opinion concurring in the judgment filed by *Circuit Judge* BROWN.

TATEL, *Circuit Judge*: Section 23-110 of the D.C. Code establishes a procedure for collateral review of convictions in the D.C. Superior Court and creates exclusive jurisdiction in that court "unless" the remedy provided by that section is "inadequate or ineffective." In this case, we must decide whether section 23-110 bars a prisoner convicted in Superior Court from bringing a federal habeas corpus petition alleging ineffective assistance of *appellate* counsel. Because the D.C. Court of Appeals has held that challenges to the effectiveness of appellate counsel may not be brought pursuant to section 23-110, but must instead be raised through a motion to recall the mandate in that court, we hold that section 23-110 does not deprive federal courts of jurisdiction over habeas petitions alleging ineffective assistance of appellate counsel.

## I.

Although the background of this case is complicated, involving as it does several proceedings spanning more than fifteen years, *see Williams v. United States*, 878 A.2d 477 (D.C. 2005) (en banc); *Williams v. United States*, 783 A.2d 598 (D.C. 2001), understanding the issue before us requires knowing only the following.

In 1990, a D.C. Superior Court jury convicted appellant Craig Allan Williams of first-degree murder. Represented by new counsel, Williams then appealed. During the pendency of that appeal, Williams filed a motion for post-conviction relief

pursuant to D.C. Code § 23-110, which provides that a "prisoner in custody under sentence of the Superior Court claiming the right to be released upon the ground that [] the sentence was imposed in violation of the Constitution . . . may move the court to vacate, set aside, or correct the sentence." D.C. Code § 23-110(a).

Consistent with its usual practice, the D.C. Court of Appeals stayed Williams's direct appeal pending the Superior Court's resolution of his section 23-110 motion. *See Shepard v. United States*, 533 A.2d 1278, 1280 (D.C. 1987). Thereafter, the Superior Court denied Williams's section 23-110 motion, and the D.C. Court of Appeals consolidated his appeal of that denial with his direct appeal. In 1995, the D.C. Court of Appeals affirmed Williams's conviction.

Williams then filed a motion in the D.C. Court of Appeals to recall the mandate affirming his conviction—the procedure required in the District of Columbia to litigate the issue of ineffective assistance of appellate counsel. *See Watson v. United States*, 536 A.2d 1056, 1060 (D.C. 1987) (en banc). In that motion, Williams complained that counsel on both his direct appeal and his section 23-110 motion had rendered ineffective assistance. The D.C. Court of Appeals summarily denied the motion to recall the mandate.

Making the same ineffective assistance of appellate counsel claim, Williams then sought habeas relief in federal court. The district court dismissed Williams's habeas petition for lack of jurisdiction on the ground that section 23-110 provides the exclusive remedy for collateral challenges to sentences imposed by the Superior Court. *Williams v. Martinez*, 559 F. Supp. 2d 56, 57–58 (D.D.C. 2008).

Williams appealed, and we referred his case to the district court to determine in the first instance whether to issue a certificate of appealability (COA). *See* 28 U.S.C. § 2253(c)(1) (requiring a COA to appeal a final order in a habeas proceeding); *United States v. Mitchell*, 216 F.3d 1126, 1130 (D.C. Cir. 2000) (holding that petitioners should seek a COA from the district court before requesting one from the appeals court). The district court declined to issue a COA, explaining that for the reasons given in its opinion dismissing Williams's claim for lack of jurisdiction, Williams had failed to make "a substantial showing of the denial of a constitutional right," as required for a COA. 28 U.S.C. § 2253(c)(2). Williams then filed a request for a COA in this court, and we appointed amicus curiae to present arguments on his behalf.

Because the district court denied Williams's petition without reaching the merits of his constitutional claim, we review his request for a COA in two steps. We ask first whether Williams has shown that "jurists of reason would find it debatable whether the district court was correct" in dismissing his petition for lack of jurisdiction, and second whether "jurists of reason would find it debatable whether [his] petition states a valid claim of the denial of a constitutional right." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). We take each step in turn.

## II.

The answer to the first question—whether the district court correctly dismissed Williams's claim for lack of jurisdiction—turns on the reach of section 23-110. Section 23-110(a) authorizes a "prisoner in custody under sentence of the Superior Court" to "move the court to vacate, set aside, or correct the sentence." D.C. Code § 23-110(a). Section 23-110(g) provides:

> An application for a writ of habeas corpus in behalf of a prisoner who is authorized to apply for relief by motion pursuant to this section shall not be entertained by the Superior Court or by any Federal or State court if it appears that the applicant has failed to make a motion for relief under this section or that the Superior Court has denied him relief, unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention.

D.C. Code § 23-110(g).

Williams contends that section 23-110(g) presents no bar to his ineffective assistance of appellate counsel claim. Specifically, he argues that because the D.C. Court of Appeals prohibits prisoners from bringing challenges to the effectiveness of appellate counsel under section 23-110—they may be raised only through a motion to recall the mandate—his remedy under section 23-110 is "inadequate or ineffective." According to the government, Williams, by focusing solely on the adequacy of his remedies under section 23-110, "addresses the wrong question." Appellees' Br. 25. As the government sees it, the proper inquiry is not whether section 23-110 provides an adequate remedy to test the legality of Williams's detention, but rather whether the "local remedy" taken as a whole does. *Id.* Therefore, the government argues, because the D.C. Court of Appeals provides an adequate local remedy to challenge the effectiveness of appellate counsel, namely the opportunity to file a motion asking the court to recall its mandate, section 23-110 bars Williams's habeas petition.

We agree with Williams. Section 23-110(g)'s plain language makes clear that it only divests federal courts of jurisdiction to hear habeas petitions by prisoners who could have raised viable claims pursuant to section 23-110(a). Recall

that section 23-110(g) provides that a prisoner authorized to apply for relief under section 23-110(a) may not bring a habeas petition in federal court "unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention." D.C. Code § 23-110(g). "[R]emedy by motion" plainly refers to motions filed pursuant to section 23-110(a). Although the D.C. Court of Appeals allows prisoners to challenge the effectiveness of appellate counsel through a motion to recall the mandate, such a motion—filed directly in the D.C. Court of Appeals—is obviously not a "remedy by [section 23-110] motion," which is filed in the D.C. Superior Court. D.C. Code § 23-110(g). Indeed, the D.C. Court of Appeals itself has emphasized that a motion to recall the mandate is an "independent" action separate and apart from a section 23-110 motion. *Wu v. United States*, 798 A.2d 1083, 1091 (D.C. 2002). Thus, because the Superior Court lacks authority to entertain a section 23-110 motion challenging the effectiveness of appellate counsel, that section is, by definition, inadequate to test the legality of Williams's detention. Accordingly, section 23-110 does not bar Williams's habeas petition.

Our decision in *Streater v. Jackson*, 691 F.2d 1026 (D.C. Cir. 1982), supports this view. There, the D.C. Court of Appeals dismissed Streater's section 23-110 motion alleging ineffective assistance of appellate counsel. Streater then petitioned for habeas relief in the district court, which dismissed his petition for failing to exhaust his local remedies. On appeal, we recognized that Streater found himself in a bind: on the one hand, section 23-110 was unavailable to him because the Superior Court lacks authority to review appellate proceedings; on the other hand, the D.C. Court of Appeals had at that time failed to clarify what avenue of local relief remained open to him. Accordingly, we instructed the district court to hold Streater's habeas petition in abeyance pending his application to

the D.C. Court of Appeals to recall its mandate—the very procedure subsequently adopted by the D.C. Court of Appeals as the appropriate vehicle for mounting a challenge to the effectiveness of appellate counsel. *Id.* at 1028; *see Watson*, 536 A.2d at 1060–61 (requiring that ineffective assistance of appellate counsel claims be litigated through a motion to recall the mandate). Of significance to the issue before us, we clarified that after "a cogent ruling from the D.C. Court of Appeals concerning local relief, if any, for Streater, the District Court will be in a position to rule intelligently on his federal petition for habeas corpus." *Streater*, 691 F.2d at 1028. In other words, *Streater* anticipated precisely the situation we confront here—a federal habeas petition asserting ineffective assistance of appellate counsel after the prisoner moved to recall the mandate in the D.C. Court of Appeals—and seemed to have assumed that the district court would have jurisdiction to entertain that petition.

*Blair-Bey v. Quick,* 151 F.3d 1036 (D.C. Cir. 1998), further reinforces this conclusion. In that case, a prisoner convicted of violating the District of Columbia Code filed a federal habeas petition challenging the procedures under which he was denied parole by the D.C. Parole Board. We concluded that section 23-110 presented no bar to the habeas proceeding, explaining that the claim could not have been brought under section 23-110 because it did not "challenge [Blair-Bey's] conviction or sentence" as provided in section 23-110, and "section 23-110(g) only bars us from hearing those claims that could have been raised through section 23-110." *Id.* at 1043; *see also Neal v. Director,* 684 F.2d 17, 19 (D.C. Cir. 1982) (finding that section 23-110(g) does not preclude federal court jurisdiction over a prisoner's habeas challenge to his transfer between penitentiaries because challenges to prison transfer procedures fall outside the scope of section 23-110). *Blair-Bey* therefore confirms that section 23-110(g) divests federal courts of

jurisdiction only over habeas petitions by prisoners who, unlike Williams, have an effective section 23-110 remedy available to them.

*Blair-Bey* also speaks to the question, arguably left open in *Streater*, whether the availability of an adequate local remedy outside section 23-110 is sufficient to bar prisoners sentenced in the District of Columbia from seeking federal habeas relief. In *Blair-Bey*, as in this case, the prisoner had another means to seek his release: section 16-1901 of the D.C. Code, which provides a general habeas corpus remedy for prisoners confined in the District. D.C. Code § 16-1901. Despite the availability of that alternative procedure, however, we allowed Blair-Bey's federal habeas petition to go forward. *Blair-Bey*, 151 F.3d at 1047.

The section 16-1901 procedure at issue in *Blair-Bey* is analogous to the mandate-recall procedure at issue here in that both provide prisoners with a means to secure their release, and both provide relief comparable to that otherwise available for claims that fall within section 23-110's scope. *See Norris v. United States*, 927 A.2d 1034, 1038 (D.C. 2007) (explaining that section 16-1901 and section 23-110 are both "designed to permit challenges to unlawful custody"). Indeed, section 16-1901 is perhaps more akin to section 23-110 because, like a section 23-110 motion, a habeas petition under section 16-1901 is filed directly with the Superior Court. *See* D.C. Code § 16-1901(c). But just as the availability of section 16-1901 did not bar Blair-Bey's federal habeas petition, the availability of the mandate-recall procedure does not divest the federal district court of jurisdiction over Williams's petition.

Nothing in *Garris v. Lindsay*, 794 F.2d 722 (D.C. Cir. 1986), on which the government relies, requires a different result. In that case, Garris, a D.C. prisoner, argued in his direct

appeal that he had been denied his Sixth Amendment right to represent himself in his Superior Court trial. The D.C. Court of Appeals rejected that claim, and D.C. law barred him from relitigating the issue collaterally under section 23-110. *Id.* at 727. Garris then filed a federal habeas petition in which he argued that because he was unable to take advantage of section 23-110, the district court had authority to entertain his petition. Noting that "[i]t is the inefficacy of the remedy, not a personal inability to utilize it, that is determinative," we concluded that the district court lacked habeas jurisdiction. *Id.* at 727. Here, it is indeed the "inefficacy of the remedy" that presents the problem. Section 23-110 was unavailable to Williams because his constitutional claim—unlike Garris's—falls outside that statute's scope.

In concluding that Williams may proceed with his habeas petition, we are mindful that when Congress enacted section 23-110 as part of the District of Columbia Court Reform and Criminal Procedure Act of 1970, Pub. L. No. 91-358, § 210, 84 Stat. 608, it sought to vest the Superior Court with exclusive jurisdiction over most collateral challenges by prisoners sentenced in that court. *See Swain v. Pressley*, 430 U.S. 372, 378 (1977); *Blair-Bey*, 151 F.3d at 1045–46; *see also Swain*, 430 U.S. at 381–82 (explaining that "[s]ince the scope of the remedy provided by § 23-110 is the same as that provided by § 2255, it is also commensurate with habeas corpus in all respects save" administration by Article III judges). That said, Congress also included the "inadequate or ineffective" exception, indicating that it contemplated circumstances under which prisoners sentenced in Superior Court could petition for habeas relief in federal court. As noted above, *supra* at 7–8, we have already recognized some exceptions under section 23-110(g), and today we recognize another. The government warns that allowing habeas petitions like Williams's to proceed will "open the floodgates to frivolous federal habeas claims." Appellees'

Br. 35.  Although the government gives us no basis for thinking that will happen, Congress can always close the "floodgates" if the feared deluge comes to pass.

The concurring opinion correctly notes that D.C. prisoners who challenge the effectiveness of appellate counsel through a motion to recall the mandate in the D.C. Court of Appeals will get a second bite at the apple in federal court.  But that is a consequence of section 23-110(g), which bars federal habeas claims only when the *section 23-110* motion is adequate or effective.  As explained above, a motion to recall the mandate does not qualify as a motion pursuant to section 23-110. Moreover, we allowed Blair-Bey to file a federal habeas petition challenging his parole proceedings even though the D.C. Court of Appeals had affirmed the Superior Court's denial of his D.C. habeas petition making precisely the same claim.  *Blair-Bey*, 151 F.3d at 1038, 1047.  We also recognize that if the D.C. Court of Appeals wishes to avoid federal habeas review of ineffective assistance of appellate counsel claims, it would have to abandon its mandate-recall procedure and permit the Superior Court to entertain such challenges under section 23-110—just as we require such claims to be raised directly in the district court pursuant to 28 U.S.C. § 2255.  *See United States v. Henry*, 472 F.3d 910, 915 (D.C. Cir. 2007) (requiring federal prisoners to raise ineffective assistance of appellant counsel claims pursuant to section 2255); concurring op. at 5–6.  But again, that is a consequence of how Congress wrote section 23-110 and how the District of Columbia's highest court has interpreted that provision of the D.C. Code.  Although Congress could amend the statute, we cannot, and on questions of District of Columbia law this court defers to the D.C. Court of Appeals.  *See Blair-Bey*, 151 F.3d at 1050.

Given the foregoing, Williams has more than satisfied the first step of his COA burden.  He has shown not just that the

district court's habeas jurisdiction is debatable, *see Slack*, 529 U.S. at 484, but that under section 23-110 the district court in fact has jurisdiction to entertain his habeas petition. We must therefore decide whether Williams has presented a reasonably debatable claim of the denial of a constitutional right, an issue to which we now turn.

## III.

Although criminal defendants enjoy a due process right to the effective assistance of counsel during their first appeal as of right, *Evitts v. Lucey*, 469 U.S. 387, 396 (1985), the Supreme Court has made clear that defendants lack a constitutional entitlement to effective assistance of counsel in state collateral proceedings, *Coleman v. Thompson*, 501 U.S. 722, 752 (1991). In this case, the government contends that Williams's ineffective assistance of counsel claims relate solely to his section 23-110 motion, a collateral procedure to which no right of counsel attaches. Accordingly, the government argues, Williams has failed to allege the denial of a constitutional right and so has no right to a COA. We disagree.

The government is certainly correct that Williams's habeas petition challenges the effectiveness of counsel in the section 23-110 proceedings. But the petition does not stop there. It goes on to challenge the effectiveness of counsel in the direct appeal as well. "Ground two" of the petition expressly alleges the "[d]enial of due process and effective assistance of counsel on first appeal of criminal conviction." Pet. for Writ of Habeas Corpus at 19.5, *Williams v. Martinez*, 559 F. Supp. 2d 56 (D.D.C. 2008) (No. 08-0971). Contrary to the government's claim, then, Williams has in fact asserted the denial of a constitutional right—effective assistance of counsel in his direct appeal.

Having established that Williams has asserted a constitutionally cognizable right in his habeas petition, we must determine whether he has shown a reasonably debatable infringement of that right. *See Slack*, 529 U.S. at 484. "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). Because the district court found it unnecessary to reach the merits of Williams's habeas petition, however, we lack the benefit of that court's analysis. Moreover, the parties' briefs give little attention to the merits of Williams's claim, and to the extent that they do, they disagree on the precise nature of that claim. Given all this, we are unprepared to decide whether Williams has met his burden of stating "a valid claim of the denial of a constitutional right." *Slack*, 529 U.S. at 484; *see id.* at 485, 489 (declining to address the merits of the COA analysis where the parties had not briefed the issue). Accordingly, we remand the case to the district court to consider the merits component of the COA question, an evaluation that the court should undertake in light of the standard set forth in 28 U.S.C. § 2254. *See Miller-El*, 537 U.S. at 349–50 (Scalia, J., concurring) (explaining that a judge should deny a COA if all reasonable jurists would conclude that the habeas statute bars relief); *cf. Madley v. U.S. Parole Comm'n*, 278 F.3d 1306, 1308–09 (D.C. Cir. 2002) (holding that District of Columbia courts are deemed to be state courts for purposes of 28 U.S.C. § 2253); *Coady v. Vaughn*, 251 F.3d 480, 484–85 (3d Cir. 2001) (requiring a state prisoner to challenge his custody under 28 U.S.C. § 2254 rather than § 2241).

For the foregoing reasons, we reverse the dismissal of Williams's habeas petition and remand to the district court for further proceedings consistent with this opinion.

*So ordered*.

BROWN, *Circuit Judge*, concurring in the judgment: I agree it was error for the district court to dismiss Williams's habeas petition for lack of jurisdiction pursuant to D.C. Code § 23-110(g). However, the court interprets section 23-110 so literally it confers routine jurisdiction in federal court for all claims of ineffective assistance of appellate counsel by prisoners under D.C. sentence. Since I believe this result departs from congressional intent, I would read the statutory scheme broadly to maintain federal jurisdiction solely as a safety valve. Therefore, I concur only in the judgment.

I.

History matters here. Our current dilemma arises out of a succession of procedural anomalies that can only be described as "A Series of Unfortunate Events." First, when section 23-110 was enacted in 1970, the constitutional claim of appellate ineffective assistance of counsel (IAC) did not exist. The Supreme Court did not recognize a Sixth Amendment right to effective assistance of counsel on direct appeal of a criminal conviction until *Evitts v. Lucey*, 469 U.S. 387, 395 (1985). Several years before *Lucey*, however, the District of Columbia Court of Appeals (DCCA) considered an appellate IAC claim in *Streater v. United States*, 429 A.2d 173 (D.C. 1980) (*Streater I*). In *Streater I*, the DCCA held Streater, a D.C. prisoner, could not raise the claim in a section 23-110 motion. The DCCA determined the claim was "not within the purview of § 23-110" because, among other reasons, Streater "has not argued that his sentence was imposed in violation of the Constitution of the United States." *Id*. at 174. At the time, prior to *Lucey*, this was a correct statement of the scope of section 23-110. Relying on two federal circuit decisions interpreting the federal habeas statute, 28 U.S.C. § 2255, the DCCA also noted section 23-110 "provides no basis upon which the trial court may review appellate proceedings." *Id*.

In *Streater v. Jackson*, 691 F.2d 1026 (D.C. Cir. 1982) (*Streater II*), we reviewed the district court's dismissal of Streater's habeas petition.  Streater argued he was given the "run around" by the D.C. courts.  *Id*. at 1028.  We observed the DCCA had not "enlightened Streater as to the remedy, if any, still open to him in the local courts."  *Id*.  Reluctant to meddle with the DCCA's jurisdiction, we ordered the district court to hold Streater's petition in abeyance and invited the DCCA to consider his motion to recall the mandate.  *Id*.  It did.  *See Streater v. United States*, 478 A.2d 1055 (D.C. 1984).

Fast forward to *Watson v. United States*, 536 A.2d 1056 (D.C. 1987) (en banc), in which the DCCA again faced an appellate IAC claim, but this time post-*Lucey*.  The DCCA revisited the procedural question of "how one may challenge previous counsel's effectiveness on appeal."  *Id*. at 1059.  Turning to *Streater I*, the DCCA again rejected section 23-110 as a procedure for raising this claim because "the Superior Court should not have authority to rule on the constitutionality of an appellate proceeding."  *Id*. at 1060 (citing *Streater I*, 429 A.2d at 174).  The court also refused to allow the claim to be brought under the District's general habeas statute, D.C. Code § 16-1901, for the same reason.  *Id*. (citing *Streater II*, 691 F.2d at 1028).  Having dismissed these statutory habeas remedies, the court identified an appropriate procedural vehicle for the claim: "A motion in this court to recall the mandate is the appropriate avenue to take in presenting a *Lucey* challenge."  *Id*. (citing *United States v. Winterhalder*, 724 F.2d 109, 111 (10th Cir. 1983)).  In reaching this conclusion, the DCCA observed that in *Streater II* we had approved its decision to remove the claims from section 23-110 in *Streater I*.  *Id*. at 1060–61.

## II.

With this history in mind, I turn to the statutory provision at issue, section 23-110(g), which provides:

> An application for a writ of habeas corpus in behalf of a prisoner who is authorized to apply for relief by motion pursuant to this section shall not be entertained by the Superior Court or by any Federal or State court if it appears that the applicant has failed to make a motion for relief under this section or that the Superior Court has denied him relief, unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention.

D.C. Code § 23-110(g). The court interprets this provision to mean the federal courts have jurisdiction to entertain a D.C. prisoner's habeas petition whenever the prisoner is not "authorized to apply for relief by motion pursuant to this section." *See* Op. at 5–6. Because in *Streater I* the DCCA held appellate IAC claims cannot be presented in a section 23-110 motion, the court correctly observes a prisoner with such a claim is not "authorized" to file a section 23-110 motion; thus, the court reasons, section 23-110 is "by definition, inadequate" to address those claims. Op. at 6. While it is true the statute's plain words may be read to justify the court's holding, the result is clearly at odds with the statute's purpose.

Enacted by Congress in 1970, section 23-110 was only one provision of a sweeping legislative reform designed to remove "local litigation" from the federal courts to the District of Columbia's judicial system. *Swain v. Pressley*, 430 U.S. 372, 375 (1977). As the Supreme Court noted in

4

*Swain*, section 23-110 created for prisoners under D.C. sentence a collateral procedure in the Superior Court "comparable" to the habeas statute for federal prisoners, section 2255. *Id*. Section 23-110, like section 2255, was "intended to substitute a different forum [the Superior Court] and a different procedure [section 23-110] for collateral review" of D.C. prisoners' sentences. *Id*. at 378. The statute's clear purpose was to shift initial habeas jurisdiction for D.C. prisoners from the federal courts to the District of Columbia courts. *See Byrd v. Henderson*, 119 F.3d 34, 36–37 (D.C. Cir. 1997).

This court now says the DCCA's interpretation of section 23-110 requires federal courts to assume jurisdiction over appellate IAC claims. The court in effect says, "The DCCA made us do it." Congress enacted section 23-110 with the broad purpose of accomplishing the opposite result, and the DCCA, with our encouragement, exercised its best judgment in fashioning a procedural remedy for a heretofore unrecognized constitutional claim. The DCCA therefore could respond, "The D.C. Circuit made us do it."

III.

The answer lies in section 23-110(g)'s "inadequate and ineffective" clause—what we have called the "safety valve." *Blair-Bey v. Quick*, 151 F.3d 1036, 1042 (D.C. Cir. 1998). In *Swain*, the Supreme Court upheld section 23-110 against a Suspension Clause challenge, relying heavily on the last clause of section 23-110(g): "That clause allows the District Court to entertain a habeas corpus application if it 'appears that the remedy by motion is inadequate or ineffective to test the legality of [the applicant's] detention.'" 430 U.S. at 381. Congress decided to replicate a "state" judicial system in the

District of Columbia, with no interference from the federal courts unless the state habeas remedy is deficient. Logically, then, section 23-110(g) should be read purposively to require federal courts to determine if the remedy, including a substitute procedural mechanism like the motion to recall the mandate, is "adequate and effective to test the legality" of the prisoner's detention.

The DCCA's motion to recall the mandate procedure is cumbersome, requiring the movant to meet a high initial burden. *See Watson*, 536 A.2d at 1060. It is thus unclear whether the recall-mandate procedure is an entirely adequate and effective remedy. But we do not have to answer that question in Williams's case because the DCCA summarily denied his motion to recall the mandate, his motion for an explanation, and his petition for rehearing. The DCCA's failure to explain why it denied Williams's motion leaves us with no basis to determine whether it actually considered his claim on the merits or rejected the claim solely because Williams had failed to satisfy the initial burden for such motions. We therefore cannot find the remedy afforded Williams is adequate and effective, and section 23-110(g)'s safety valve operates to allow the federal district court jurisdiction to entertain his habeas petition.

## IV.

With all this in mind, I see no reason for the court to revisit the *Streater* question and reinterpret section 23-110(g). The court today does a bait-and-switch: it rejects the mandate-recall procedure and informs the DCCA the federal courts have jurisdiction to hear Williams's claim and others like it unless the DCCA overrules its precedent and allows those

claims to be heard by the Superior Court under section 23-110.

It is true the procedural diktat the court imposes on the DCCA today is identical to the procedure we have adopted for ourselves. We "ordinarily" require federal prisoners to raise appellate IAC claims collaterally pursuant to section 2255. *United States v. Henry*, 472 F.3d 910, 914 (D.C. Cir. 2007). But to give credit where credit is due, at the time the DCCA adopted the motion to recall the mandate procedure—only a year after *Lucey*—its decision was eminently reasonable. Once the Supreme Court had authorized a new constitutional claim to challenge events happening after the trial court proceedings, it was logical to require the claim to be initiated in the court before which the alleged defect occurred.

Moreover, when facing this same question, other federal and state appellate courts have made the exact same choice. *See State v. Knight*, 484 N.W.2d 540, 543 n.5 (Wis. 1992) (noting Third, Ninth, and Tenth Circuits, Missouri, and the District of Columbia employed motion to recall the mandate procedure); *see also United States v. West*, 240 F.3d 456, 460 n.3 (5th Cir. 2001) (surveying approaches of federal and state courts). Still other courts have answered the question differently than either the DCCA or our circuit. For instance, the Wisconsin Supreme Court, confronting a statutory provision nearly identical to section 23-110, determined the statutory provision was "'inadequate or ineffective'" to address appellate IAC claims. *Knight*, 484 N.W.2d at 544. After considering the approaches taken by other appellate courts, the Wisconsin Supreme Court held the claim should be presented directly to the state appellate court in an original writ of habeas corpus. *Id*. at 544–45; *see also West*, 240 F.3d at 460 n.3 (observing Second Circuit recalls its own mandate

from dismissal of direct appeal after district court has denied section 2255 relief). We cannot fault the DCCA for doing exactly what other courts have done when facing this thorny procedural question.

Because the court has determined, as a matter of law, that section 23-110 is inadequate and ineffective to raise appellate IAC claims, a D.C. prisoner may now file a habeas petition asserting this claim in the federal district court, and the court will be obligated to review the claim on the merits. In light of the exhaustion requirement of 28 U.S.C. § 2254(c), the prisoner will first have to file a motion to recall the mandate with the DCCA. But even if the DCCA recalls the mandate, remands the record to the Superior Court for a factual hearing, and then denies the prisoner's claim in a decision on the merits—clearly an adequate and effective remedy—the prisoner still gets a second (or more accurately third) bite at the apple in federal court. Some of these claims will be summarily resolved pursuant to AEDPA's deferential standards, and it is unclear what the added burden on our courts will be. For instance, Williams's appellate IAC claim appears to be little more than a string of tenuous arguments nested like Russian dolls. A better use of our judicial resources would be to assert jurisdiction only where the safety valve is truly implicated.

At this late hour, rather than leaving the DCCA with a Hobson's choice, I would allow it to address the matter in the first instance, as we did in *Streater II*. There we noted, "it is apparent that the D.C. Court of Appeals is the tribunal best situated to address Streater's claim that he was denied effective assistance of counsel in that forum." 691 F.2d at 1028. Principles of federalism and comity also gave us pause back then: "Mindful that relations between the District of

Columbia and federal systems should not be 'disturbed by unnecessary conflict between courts equally bound to guard and protect rights secured by the Constitution,' we believe the D.C. Court of Appeals should be invited to consider and rule on the merits of Streater's claim for post-conviction relief." *Id.* (quoting *Ex parte Royall*, 117 U.S. 241, 251 (1886)). These concerns are heightened when, as is the case here, we interpret a provision of the D.C. Code that is "an Act of Congress applicable exclusively to the District of Columbia" because "[w]e do not treat such local statutes as if they were part of the United States Code," and "[o]ur policy has been to defer to the District of Columbia Court of Appeals on questions of statutory interpretation." *United States v. Edmond*, 924 F.2d 261, 264 (D.C. Cir. 1991). If, as in *Streater II*, we remanded Williams's habeas petition to the federal district court and ordered it held in abeyance, we would allow the DCCA the opportunity either to recall its mandate and address Williams's claim on the merits or to revisit the underlying question that has caused this court and others so many procedural headaches.